ACCEPTED
04-15-00284-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/21/2015 12:02:21 AM
KEITH HOTTLE
CLERK

NO. 04-15-00284

IN THE TEXAS COURT OF APPEALS
FOR THE FOURTH DISTRICT

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

08/21/15 12:02:21 AM

KEITH E. HOTTLE
Clerk

## KENNETH ALLEN GOETZ

## V.

## THE STATE OF TEXAS

On Appeal from the 226th District
Court Of Bexar County, Texas
Cause No. 2014-CR- 7400W

## ANDERS BRIEF

Anthony Martin
Smith State Bar No.
18649425
P.O. BOX 90391
San Antonio, TX
78209
Tel: 210-281-9000
Fax: 210-247-6176
Amsmithlaw@gmail.com

Counsel for Appellant

## IDENTITY OF PARTIES AND COUNSEL

KENNETH ALLEN GOETZ, TDCJ-ID Div. # 01992891
Appellant-Defendant
TDCJ Garza Unit East, 4304 Highway 202, Beeville, TX 78102

SID HARLE Judge, 226th District Court of Bexar County, TX
RON RANGEL, Judge, 379th District Court of Bexar County, TX
Cadena-Reeves Justice Center, 300 Dolorosa, San Antonio, Texas 78205
Judge Rangel accepted nolo plea on September 4, 2014
Judge Harle granted deferred adjudication October 15, 2014, and on
Motions to Adjudicate Guilt on December 14, 2014 and March 4, 2015

ANTHONY MARTIN SMITH
Counsel for Appellant
P.O. Box 90391
San Antonio, TX 78209

NICOLAS LAHOOD
Bexar County District Attorney's Office
Paul Elizondo Tower
101 W. Nueva, San Antonio, Texas 78205
Counsel for Appellee

MR. DAVID MARTIN
Bexar County District Attorney's Office
Paul Elizondo Tower, 101 W. Nueva, San Antonio, Texas 78205
Counsel for the State at No Contest Plea and Sentencing

DAPHNE PREVETI
Attorney (presently serving as judge, 289th District Court, Bexar County, TX)
600 Mission Rd., San Antonio, TX 78210
Counsel for Defendant on No Contest Plea and Sentencing and re-appointed as
counsel on First Hearing on Motion to Adjudicate Guilt

MS. VELIA J. MEZA
Attorney at Law
4819 San Pedro Avenue, San Antonio, Texas 78212
Counsel for Defendant at Second Motion to Adjudicate Guilt and Sentencing

MEREDITH B MACINTIRE
CHARLES CLAYTON HADEN
Bexar County District Attorney's Office
Paul Elizondo Tower, San Antonio, Texas 78205
Counsel for the State at Hearing on Motion to Adjudicate Guilt and Sentencing

# TABLE OF CONTENTS

IDENTITIES OF THE PARTIES AND COUNSEL     2-3

TABLE OF CONTENTS     4

TABLE OF AUTHORITIES     5-6

STATEMENT OF THE CASE     7

STATEMENT REGARDING ORAL ARGUMENT     7

ISSUE PRESENTED     7

STATEMENT OF FACTS     8

SUMMARY OF REVIEW     21

REVIEW UNDER ANDERS     22

CONCLUSION AND PRAYER     26

CERTIFICATE OF SERVICE     27

# TABLE OF AUTHORITIES

**Federal Cases**

*Anders v. California*, 386 U.S. 738 (1967)………………. 6, 21-22, 26

*Miranda v. Arizona*, 384 U.S. 486 (1966) ……………….. 7

**Texas Statutes and Rules**

Tex. C. Crim. Proc. art. 1.051 ……………………………. 8

Tex. C. Crim. Proc. art. 26.04 ……………………………. 8, 21

Tex. C. Crim. Proc. art. 42.01 ……………………………. 25

Tex. C. Crim. Proc. art. 42.03 ……………………………. 25

Tex. C. Crim. Proc. art. 42.12 ……………………………. 11

Tex. C. Crim. Proc. art.42.12, §5(b) ………………………. 22

Tex. C. Crim. Proc. art. 44.02 ……………………………... 6, 11

Tex. Gov't Code Sect. 411.081 ……………………………. 9

Tex. Penal C. §29.03 ………………………………………. 8

Tex. R. App. Proc. 6.3 …………………………………..…. 27

Tex. R. App. Proc. 9.5 …………………………………….... 27

Tex. R. App. Proc. 25.2(a)(2) ……………………………… 6, 11, 23

Tex. R. App. Proc. 25.2(b)(3)(B) & (C) ……………………. 15

Tex. C. Crim. Proc. art. 42.12, § 5(b) ………………………. 6

Tex. C. Crim. Proc. arts. 44.01(j) …………………………… 6

**TEXAS CASES**

*Davis v. State*, 195 S.W.3d 708 (Tex. Crim. App. 2006) ……..          22-23

*Hogans v. State*, 176 S.W.3d 829 (Tex. Crim. App. 2005) ……          22-24

*Olowasuko v. State*, 826 S.W.2d 940 (Tex. Crim. App. 1992) ..          23

## STATEMENT OF THE CASE

This is a brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967) concerning the trial court's adjudication of appellant's guilt following his plea of true to several alleged violations of his community supervision. The court imposed a sentence of 5 years, Texas Department of Criminal Justice Institutional Division. After a conscientious examination of the record and consideration of any potential legitimate arguable basis for permissible appeal under Tex. C. Crim. Proc. 44.02 and Tex. R. App. Proc. 25.2(a)(2), counsel concludes there are no non-frivolous issues by which Appellant can in good faith seek appellate relief herein.

## STATEMENT REGARDING ORAL ARGUMENT

In light of the considerations identified in Tex. R. App. Proc. art. 39.1-.2, oral argument is unnecessary thus not requested by Appellant's counsel.

## ISSUES PRESENTED

Whether there are any non-frivolous and potentially meritorious legally supported arguments to present on appeal concerning the trial court's adjudication of guilt and imposition of sentence in the underlying cause.

## STATEMENT OF FACTS

**On June 18, 2014**, Bexar County Sherriff's deputies responded to a call from Tammy Ivy complaining her 17-year-old son, Appellant Goetz, who lived with his mother, exhibited a knife during the course of demanding and obtaining money from her, and then fled the residence. 1 CR 16-19, 31-34. On June 19, 2014, a deputy was dispatched to a residence at Goetz's residence where Appellant was apprehended and placed in custody for aggravated robbery of Ivy that occurred on June 18, 2014. 1 CR 18  Goetz was read and acknowledged his *Miranda*[1] rights on video, and provided the following information,

> The defendant explained he got a phone call from a gang member and was reminded he owed money for drugs. The defendant was told he needed to pay or they were going to kill everyone there at his residence. The defendant admitted to "pulling a knife" on his mother (the complainant). The defendant had the knife in his hand, as he told the complainant he needed cash and the car keys, or he was going to kill her. The defendant stated the knife he used as a " kitchen knife" or " steak knife." The defendant took $160.00 dollars and the left the residence in the complainant' s car. 1 CR 18

**On September 4, 2014**, Goetz appeared in court with his appointed attorney who signed a Discovery Acknowledgment. *See* Art. 36.19, Tex. C. Crim. Proc. 1 CR 36-38 and Goetz, his counsel, and the prosecutor executed the following documents, as applicable, in connection with Goetz's negotiated plea of *nolo contendere* to aggravated robbery:

---

[1] *See Miranda v. Arizona*, 384 U.S. 486 (1966)

1. **WAIVER OF INDICTMENT, READING OF INFORMATION AND RIGHTS UNDER ARTICLE 1.051 AND 26.03 C.C.P**

In this document, in which Goetz and counsel acknowledged but waived Goetz's right to wait for the Grand Jury to consider his case and decide if there was sufficient probable cause to return a True Bill of Indictment, Goetz decided to proceed on an Information setting for the charge without Grand Jury participation. *See* 1 CR 5

2. **COURT'S ADMONISHMENT AND DEFENDANT'S WAIVERS AND AFFIDAVIT OF ADMONITIONS** ("Court's Admonishment")

By this document the court admonished Goetz in relevant part, (1) the charge against him: Aggravated Robbery, Tex. Penal C. §29.03, a first degree felony, (2) the applicable range of applicable punishment: 5-99 years or life imprisonment and (3) explained to Goetz his statutory and constitutional rights, and with respect to deferred adjudication community supervision,

> If the Court defers adjudicating your guilt and places you under community supervision, on violation of any condition you may be arrested and detained as provided by law. You are then entitled to a hearing limited to a determination by the Court of whether to proceed with an adjudication of guilt on the original charge. If, at such hearing, the Court makes the determination to proceed with an adjudication of guilt on the original charge, you may appeal such determination. After adjudication of guilt, all proceedings including the assessment of punishment and your right to appeal continue as if adjudication of guilt had not been deferred. The Court is also able to assess the full range of punishment. You are hereby informed that, upon successful completion of deferred adjudication, you have a right to petition the court for an order of nondisclosure under Section 411.081, Government Code, unless you are ineligible because of the nature of

9

the offense for which you are being placed on deferred adjudication or your criminal history. 1 CR 7-11

Once Goetz signed this document, he also waived certain legal rights in exchange for entering into a plea agreement with the State of Texas, including the right to appeal if the court follows the plea agreement, the details of which are specified in the attached written document entitled, "PLEA BARGAIN." *Id*. Appellant Goetz signed the "Court's Admonishment," including the attached "PLEA BARGAIN" agreeing to plead of *Nolo Contendere* to the charge of Aggravated Robbery in exchange for a recommendation to the court that Goetz receive a five (5) years deferred adjudication, a fine of $1,000, and require Goetz comply with listed requisite conditions of community supervision, including a TAIP[2] evaluation, MIC evaluation,[3] and a minimum period of in-patient treatment. *See* 1 CR 7-11.

In the PLEA BARGAIN Appellant also agreed, as follows:

> I, the undersigned Defendant, together with my counsel and counsel for the State, agree that in exchange for the Defendant's agreement to plead guilty or nolo contendere, to allow the State to prove its case by means of written stipulations. The State may make recommendations regarding punishment; however, it is understood by all that even in the event the parties agree to recommend specific conditions and terms of community supervision or deferred adjudication or the length of supervision that such recommendations are not part of the formal plea

---

[2] TAIP = Treatment Alternatives to Incarceration Evaluation
[3] MIC- Bexar County Department of Community Supervision Specialty Caseload for Mentally Impaired Offenders and MIOF - Mentally Impaired Offender Facility when placement is needed to address the mental health concerns of mentally impaired offenders on community supervision

agreement and are not binding on the Court. All parties understand and agree that the terms, conditions and length of supervision of community supervision or deferred adjudication are to be determined and assessed solely within the Court's discretion. It is further understood and agreed by the parties that in the event the Court assessed terms, conditions and or a length of supervision of community supervision or deferred adjudication different from those agreed to by the parties, that such difference shall not constitute grounds for setting aside the Defendant's plea in this cause. If the court grants deferred adjudication, the State does not recommend any term of years as part of the plea agreement. All parties agree that if deferred adjudication is subsequently revoked, Defendant may be sentenced to any term of years within the range of punishment provided by law for this offense. 1 CR 11

The PLEA BARGAIN further advised concerning WAIVER OF APPEAL, as follows:

I understand that upon my plea of *nolo contendere*, where the punishment does not exceed that recommended by the prosecutor and agreed to by me, my right to appeal will be limited to only: (1) those matters that were raised by written motion filed and ruled on before trial, or (2) other matters on which the trial court gives me permission to appeal. I understand that I have this limited right to appeal. However, as part of my plea bargain agreement in this case, I knowingly and voluntarily waive my right to appeal under (1) and (2) in exchange for the prosecutor's recommendation, provided that the punishment assessed by the court does not exceed our agreement. In addition, if and when I am sentenced to the Texas Department of Criminal Justice on this case, I hereby request transfer to said institution.

1 CR 7-11.

3. **WAIVER. CONSENT TO STIPULATION OF TESTIMONY AND STIPULATIONS**

By this document, Goetz allowed the trial court to review attached reports from the prosecution to consider whether the evidence sufficiently substantiated

11

Goetz's *nolo contendere* plea and also included a judicial confession by Goetz to the charged offense of Aggravated Robbery.  1 CR 12-15

4.    **APPLICATION FOR DEFERRED ADJUDICATION OR COMMUNITY SUPERVISION (NON JURY)**

By this document, Goetz applied for deferred adjudication or in the alternative regular community supervision under Tex. C. Crim. Proc. art. 42.12, Tex. C. Crim. Proc. 1 CR 39

5.    **TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL**

By this document dated October 15, 2015, that Goetz, his counsel, and the trial judge executed, the Court certified that Goetz's case is a "plea-bargain case, and Goetz has NO right of appeal."[4] 1 CR 43

On September 4, 2014, the above documents were filed with the Bexar County District Clerk and Goetz appeared before the judge with counsel and pled *nolo contendere* to Aggravated Robbery, the charge contained the Information. 1 CR 6

**On October 15, 2014**, the case reconvened for sentencing and prior to

_____

[4] *"A defendant in a criminal case has the right of appeal under Code of Criminal Procedure Article 44.02 and these rules. This trial court shall enter a certification of the defendant's right of appeal each time it enters a judgment of guilt or other appealable order. In a plea bargain case ~ that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant ~ a defendant may appeal only: (A) those matters that were raised by written motion filed and ruled on before trial, or (B) after getting the trial court's permission to appeal." TEXAS RULE OF APPELLATE PROCEDURE 25.2(a)(2). *Id*.

12

granting Goetz's Application for Deferred Adjudication, the Court received a Supplemental Report indicating because of Goetz's age, he was not yet eligible for the MIC or MIOF programs,[5] but recommending Goetz's continued treatment through the Center for Health Care Services where he had been diagnosed for mental illness and received past treatment. 1 CR 40. The court then granted Goetz's Application for Deferred Adjudication, and entered an Order of Deferred Adjudication and ordered Goetz into the Bexar County CSCD Violators Facility – (Zero Tolerance Program) and for a Medical Screening. 1 CR 41-42, 48. Goetz, a probation officer, and the judge executed the "Terms and Conditions of Community Supervision" applicable to Goetz's case. *See* 1 CR 44-47

**First Motion to Enter Adjudication of Guilt**

**On October 30, 2014**, the State filed its first "Motion to Enter Adjudication of Guilt and Revoke Community Supervision (Adult Probation)" against Goetz alleging he violated community supervision condition #1 by (a) committing the offense of Aggravated Assault on October 28, 2014; (b) committing the offense of Assault on October 28, 2014; (c) committing the offense of Terroristic Threat on October 28, 2014; and (d) possessed a weapon, to-wit, a knife on October 28, 2014. 1 CR 48-50 The Court issued a warrant for Goetz on October 30, 2014 and appointed counsel Daphne Previti to represent him on October 31, 2014. 1 CR 50-

---

[5] MIC – Mentally Impaired Caseload; MIOF – Mentally Impaired Offender Facility

**On December 12, 2014**, the Court entered its Order Amending Goetz's Conditions of Community Supervision, as follows:

Condition 33 Comply with mental health treatment plan within 30 days.

Condition 34 General Order You will neither contact nor attempt to contact Brandon Ivy nor any of his/her family members in person, verbally, telephonically, in writing or in any other manner, and should you find yourself inadvertently in contact with said individual, you will immediately leave and not threaten, assault, or verbally abuse him/her.

Condition 35 Beginning I 0/15/14, report to, apply for, provide documentation of attendance and comply with all rules, regulations, instructions and financial agreements, as directed by the Court and/or Supervision Officer and/or the head of or authorized personnel of the following program: GPS- Recovery Healthcare, 210-229-1495. ******30 days

Condition 36: Must reside with father at 367 E Hutchin's (sic) Place, SATX 78221.

Condition 37: Must enroll in school within 30 days.

All other terms and conditions of the original Order of community supervision dated the 15th day of October, 2014, shall remain in full force and effect as heretofore ordered.

The judge, Goetz, and the supervision officer signed the Order. *See* 1 CR 52

On **January 5, 2015**, the Bexar County Community Supervision Officer filed a "Violation Report" alleging Goetz violated the following:

[X]  Condition 5   Failed to report on 12/29/14 as instructed.

[X] Condition 35 Failed to Comply with GPS Monitoring.

[X] Condition 36 Failed to Reside with Father, as ordered by Court.

COMMENTS: Offender Goetz was placed on his GPS monitor on 12/23/14. Offender Goetz cut off his monitor 12/27/14 and it was found by a store clerk and turned into the San Antonio Police Department. Offender Goetz's whereabouts are currently unknown and all attempts to locate him have failed. Prior to his GPS removal, he called to inform this officer that he moved out of his dad's house and was living with his mother (his victim). This address change was not approved by this officer or the Court. *See* 1 CR 53

Also, on January 5, 2014, the State filed its second Motion to Enter Adjudication of Guilt and Revoke Goetz's Community Supervision ("Second Motion") asserting the following:

Defendant violated the terms and conditions therein in the following particulars, to-wit:

VIOLATED CONDITION N0.5: In Bexar County, Texas, the defendant, Kenneth Allen Goetz, did then and there fail to report in person to the Supervision Officer, as instructed, for the day of December 29, 2014, in violation of Condition No. 5.

VIOLATED CONDITION N0.35: On or about the 27th day of December, 2014, in Bexar County, Texas, the defendant, Kenneth Allen Goetz, did then and there violate the rules and regulations of the GPS Program, in that the defendant cut off the device, in violation of Condition No, 35.

VIOLATED CONDITION NO. 36: On or about the 23" day of December, 2014, in Bexar County, Texas, the defendant, Kenneth Allen Goetz, failed to reside at the address of 367 E. Hutchin's (sic) Place San Antonio, TX 78221 (with his father), as mandated by the Court, in violation of Condition No. 36.

15

1 CR 54

**Hearing on Second Motion to Enter Adjudication of Guilt**

**On April 2, 2015**, Goetz appeared at the hearing concerning the Second Motion to Enter Adjudication of Guilt, and with his counsel, Velia Meza, present, the court provided Goetz with the "Trial Court's Certification of Defendant's Right to Appeal," informing Goetz, "I, judge of the trial court, certify this criminal case: is an adjudication of guilt following a deferred adjudication, and the defendant has a limited right of appeal."[6] 1 CR 55 The judge, Goetz, and his counsel signed this document. *Id.*

Thereafter during the hearing, the following exchange occurred:

> THE COURT: State of Texas versus Kenneth Goetz, 2014-CR-7400W, aggravated robbery. Originally a 5-year deferred adjudication. Motion on December 14th, continued on deferred adjudication. We're here on a motion to revoke and enter adjudication of guilt. Violation of condition 5, failing to report. Allegation 35, rules and regulations of the GPS was violated. Allegation, the device was cut off. And violation 36 failed to remain at the residence. How are we going to proceed?
>
> MS. MEZA: Your Honor, my client would like to plead true to the allegations with an explanation as to each.
>
> THE COURT: All right. So plead true to all three?
>
> MS. MEZA: Yes, Judge.

---

[6] The document advises defendants their limited appellate rights under Tex. R. App. Proc. 25.2(b)(3)(B) & (C).

16

THE COURT:     State's recommendation?

MR. MARTIN:     Revocation.

1 RR 3

The defense called its first witness: Tammy Ivy, Goetz's mother and the complainant in the original charge who advised Goetz is bipolar and ADHD since 4 years of age, medicated since age 8, under mental health care with the Center for Health Care Services, explaining he had returned to live with her rather than his father as ordered because his father did not believe in Goetz taking his needed medications and because his father has a drinking problem, thus predicating Goetz leaving his home and violating one of the conditions of his probation. 1 RR 4-6, 8 Witness Ivy assured the court she would supervise Goetz and assure his compliance with conditions of community supervision if the court gave Goetz another opportunity to continue on deferred adjudication. *See* 1 RR 6-7.

The defense called its last witness: Goetz who sought to explain his actions in violating his conditions of community supervision, as follows:

> Q.     Now, Kenneth, you don't deny that you failed to
>         Report in December; correct?
>
> A.     No, ma'am.
>
> Q.     And you don't deny that you took off the GPS
>         monitor?
>
> A.     No, ma'am, I don't.

17

Q. Now, looking back was that a good idea or a bad idea?

A. Very bad.

Q. And are you sorry that did you that?

A. Very.

Q. And what about not living with your dad, what was happening, why did you stop living there?

A. Well, my dad, he's cool and everything when he don't drink, but when he starts drinking he starts changing to another person.

Q. And what happens when he drinks and changes to another person, what is his behavior like towards you?

A. Verbally -- verbally abusive.

1 RR 10

THE COURT: Okay. Somebody refresh my memory -- yeah, let's concentrate on what we got here. There was some reason why you didn't go to the mother to begin with.

MS. JANE: He didn't go where?

THE COURT: There was some reason why we jumped through a bunch of hoops to get him with his father, had to go through the federal probation or supervised release to get him to his father and I'm assuming that there was a problem that he couldn't go to his mother then. Probably because she was the alleged victim in the ag robbery, there was something about a fight at that home with a family member. So why -- can somebody tell me why he wasn't with the mother since apparently it's so wonderful now? Back then why did we have to jump through all those hoops?

18

MS. JANE: Judge, I -- all I can remember, I don't think the mother at that point she was not coming in and I don't think she wanted him to stay there.

THE COURT: Yeah, I'm trying to remember why. I'm guessing is because she was a victim of an aggravated robbery. But -- but it would be easier if -- my memory would be a lot clearer if we were dealing with all these issues at the original hearing, but how -- how long did it take us from the time he cut off his monitor to get him into custody.

MS. MEZA: Thirty-nine days.

THE COURT: And how did that happen, did you finally feel bad about it and turn yourself in?

DEFENDANT: No, sir, I was planning on turning myself in the next day but they had picked me up -- they had picked me up the day before.

THE COURT: Well, that's kind of coincidental.

DEFENDANT: Yes, sir.

THE COURT: Why was it going to be on the 40th day you were going to turn yourself in?

DEFENDANT: I wasn't counting days, sir. I was scared, honestly, I know I cut it off and I was very --

THE COURT: Well, anything else that anybody wants to argue? I'm ready to go.

MS. MEZA: Yes, Judge. Your Honor, during the original PSI, I saw some notes there that you had ordered him to be evaluated for MIOF.

THE COURT: Yeah.

MS. MEZA: And that was never done.

THE COURT: Well, no, he's not eligible. Age.

MS. MEZA: He's not eligible.

THE COURT: We had no -- we had no programs for him, I remember that being a significant frustration back then, but because of his age he had no ability to go to any of those programs.

MS. MEZA: Right. And I do believe that he can continue with a good regimen of meds through the Center for Health Care Services at least until he turns 18, which is 26 days away now. I don't think he belongs in prison, Judge, I think that unfortunately he has been caught in the middle of two parents who have never gotten along for a very long time and if there was a way to put him in foster care I would recommend that to the Court because I just don't see that either parent is going to help him succeed at probation. But I understand the mother, I believe her that she wants to help him this time succeed, but the key here for him to succeed is for him to have the appropriate meds. And by his own admission, his thought process is clearer when he is on his meds which means will lead to better decision-making. And unfortunately, this has been his life since he was in third grade, 10 years old, and probably lived in the middle of a lot of conflict between the parents. So I think the issue is the meds, I don't think that he was on his meds at the time that he made the decision not to report, to cut off the GPS and not to live with his dad. So I'm asking that you deny the motion and that you continue him on deferred, Your Honor.

THE COURT: Okay, State.

MR. MARTIN: Judge, we're just asking that you revoke his community supervision for the safety of the community. He was placed on deferred on October 15th of 2014 and less than two weeks later he picked up an assault case that was the

subject of his first MTR. He was placed on a GPS monitor on December 23rd, 2014, and four days later he cut off his monitor. Any programs that would be available to him are not available for 26 days and he's already shown that it doesn't take him very long to make bad decisions that could potentially hurt people. And we're going to ask the court to revoke his community supervision and impose a sentence in the Texas Department of Criminal Justice.

THE COURT: Well, sir, you know, I can't remember us trying as hard to help somebody over the immense objection of the prosecutors in a case like this, ever, because the prosecutor was adamant that you wouldn't live up to anything that I put you on and, guess what, she was right. She was absolutely right. And we jumped through a were going to live up to your promises. I have to have a little degree of trust in somebody before I put them on probation, even when the State recommends deferred adjudication on an aggravated robbery, which I could have just rejected out of hand because that's extremely unusual. But I went along with that and then when you rewarded that with immediately coming back in with another motion and then having another hearing and going through hoops to get you placed, you've let us down every single time. So I have zero trust. And having zero trust I cannot continue you on community you guilty of the original offense. And as I warned you time and time again, this is a first degree felony where you're subject to life imprisonment on a 3G offense. But under the circumstances, I'm going to give you the minimum, five years, therapeutic community, and hopefully when you get out your family issues will be resolved or you will be old enough, frankly, to be on your own. You're old enough now, but it's time for you to get away from them and just do your own thing. Credit for any time you've been incarcerated. Good luck.

(Proceedings concluded.) 1 RR 16

**On April 7, 2015**, the trial court signed "Judgment Adjudicating Guilt," noting "No Plea Bargain Agreement," Goetz entered plea of True to violations 5, 35, and 36 as set out in the State's Motion to Adjudicate, the court found such violations true, and sentenced Goetz to five years in the Texas Department of Criminal Justice – Institutional Division with back time credit including June 20, 2014 to October 15, 2014, November 1, 2014 to December 6, 2014, and January 24, 2015 to April 2, 2015. 1 CR 56-57

**On May 4, 2015**, Goetz through counsel, Velia Meza, filed his Notice of Appeal. 1 CR 58. Under Tex. C. Crim. Proc. art. 26.04, on May 5, 2015, counsel was appointed to pursue Goetz's appeal. 1 CR 59 On May 7, 2004, the Bexar County District Clerk filed its Certification of Notice of Appeal to the Fourth Court of Appeals. 1 CR 61[7]

## SUMMARY OF REVIEW

Counsel herein has carefully reviewed the record in relation to applicable standards of review, controlling statutes, and case law, and counsel's review reflects there are no non-frivolous issues to present in a good faith appeal, thus counsel presents below his review under *Anders v. California,* 386 U.S. 738, 744 (1967)(hereinafter referred to as "*Anders*").

[7] Counsel notes that the Clerk's Certificate of Notice of Appeal indicates by its check mark in #7 of the document that "[t]he trial held was plea of guilt/nolo contendere to the court – negotiated plea agreement followed by the court" although the appeal resulted from the court's rulings on a motion to revoke community supervision. Although this creates an apparent conflict concerning Appellant's appellate rights, counsel herein disregards the Clerk's Certificate as a defect in the record, and that the Trial Court's Certification of Right of Appeal controls concerning determination of jurisdiction of this court of appeals and Appellant's right to appeal.

## REVIEW UNDER *ANDERS*

Appellant filed a general Notice of Appeal herein. 1 CR 58 With regard to deferred adjudication form of community supervision, the Texas Legislature has authorized appeal of only two types of orders:

(1) an order granting deferred adjudication and

(2) an order imposing punishment pursuant to an adjudication of guilt. *See* Tex. C. Crim. Proc. arts. 44.01(j) and 42.12, § 5(b)

Thus, only certain aspects of a deferred adjudication proceeding are appealable. Unlike "regular" probation or community supervision, the Legislature specifically barred appeal from the determination to adjudicate. *Davis v. State*, 195 S.W.3d 708, 710 (Tex. Crim. App. 2006). Under Tex. C. Crim. Proc., art. 42.12, §5(b), if a defendant violates a condition of deferred adjudication community supervision, he is entitled to a hearing "limited to the determination by the court of whether it proceeds with an adjudication of guilty on the original charge. *Davis*, 195 S.W.2d at 810; *also see Hogans v. State*, 176 S.W.3d 829, 832 (Tex. Crim. App. 2005). Yet, no appeal may be taken from this determination. *See id*.

The record herein reflects that the court below held the hearing on whether to proceed with an adjudication of guilt on Goetz's original charge of aggravated robbery. 1 RR 3-16.

23

The hearing was unitary in that the court listened to the evidence from which it decided both (1) whether to adjudicate guilt and revoke Goetz's deferred adjudication and (2) the type of sentence, including incarceration and the period of incarceration. Counsel has not discerned any proscription under law barring the trial court from conducting the hearing in this manner.

*Concerning the trial court's determination to proceed to enter an adjudication of guilt* on Goetz's original charge of Aggravated Robbery, *no appeal may be taken from such determination. See Davis*, 195 S.W.3d at 810. Moreover, since the Goetz's plea of nolo contendere to the Aggravated Assault charge was made in exchange for the recommended punishment of deferred adjudication and the court followed the plea bargain, and did not give its permission to appeal nor were any motions filed by the defense and ruled on, Appellant has no right of appeal. *See* Tex. C. Crim. Proc. art. 44.02; Tex. R. App. Proc. 25.2(a)(2)

Concerning the matters following the trial court's adjudication of Goetz's guilt, Appellant may still seek to appeal a legally supported error relating to his punishment following an adjudication of guilt and revocation of deferred adjudication. *See Hogans* 176 S.W.3d at 840; *also see Olowasuko v. State*, 826 S.W.2d 940, 942 (Tex. Crim. App. 1992)("Article 42.12 § 5(b) expressly allows an appeal of all proceedings *after* adjudication of guilt on the original charge.") This

24

generally means that a defendant such as Appellant herein is allowed to appeal punishment related issues. *See Hogans*, 176 S.W.3d at 840.

With specific regard to Appellant's punishment in the case at bar, the evidence relevant to adjudication and punishment as seen in and summarized from the Statement of Facts shows:

(1)    Goetz pled true to all alleged violations;

(2)    Goetz testified explaining his reasons for the violations;

(3)    Goetz' mother testified on behalf offering mitigating evidence;

(4)    The court took notice this was a second Motion to Enter Adjudication of Guilt (filed January 6, 2015 - less than 3 months from the date the court granted Goetz deferred adjudication on October 15, 2014);

(5)  The court had previously continued Appellant on deferred adjudication on December 12, 2014, denying the State's first Motion to Adjudicate Goetz's Guilt filed October 30, 2014 related to earlier violations of his community supervision less than two weeks after the court granted Goetz deferred adjudication);

(6)  Counsel for both sides freely argued their respective positions.

As seen in the Statement of Facts, once such evidence was presented for the court's consideration, the judge asked additional questions of Goetz and the probation officer and expressed frustration and dismay at Appellant once again having violated his community supervision following the court's recent leniency in responding to the State's first motion to enter adjudication of guilt and revoking community supervision by continuing Appellant on deferred adjudication in

December 2014 following Appellant's violating community supervision in October 2014. 1 RR 15-16, 1 CR 1

Regarding Appellant's punishment, Texas law requires that a defendant's sentence must be pronounced orally in his presence. Tex. C. Crim. Proc. art. 42.03(1); *Taylor v. State*, 191 S.W.3d 187 (Tex. Crim. App. 2004) Moreover, the Judgment must comply with Tex. C. Crim. Proc. art. 42.01.

In Mr. Goetz's case, the court imposed a sentence of 5 years incarceration in a therapeutic program within the Texas Department of Criminal Justice, Institutional Division. 1 RR 16 The possible range of punishment available to the court in sentencing Appellant was between the minimum of 5 years and the maximum of 99 years or life in prison. 1 CR 7 The court imposed a minimum sentence of 5 years incarceration upon Appellant at the lowest end of the applicable statutory range of punishment. 1 CR 56-57, 1 RR 16 Moreover, in accord with Tex. C. Crim. Proc. art. 42.03, Appellant's sentence was pronounced orally with Appellant present and the Judgment substantively fulfills the requirements of Tex. C. Crim. Proc. art. 42.01. Accordingly, no good faith error can be claimed based on the court's action relating to Appellant's sentence, thus there are no non-frivolous issues subject to appeal herein.

# CONCLUSION AND PRAYER

Following a careful review of the record in relation to the statutory requirements and interpretive case law, counsel has concluded that there are no non-frivolous issues to appeal herein.

Appellant may however submit his own appeal if he desires in accord with the instruction of *Anders v. California* and counsel will so advise Mr. Goetz of his option to do so. Accompanying this brief is counsel's motion to withdraw.

Respectfully submitted,

LAW OFFICES OF ANTHONY M. SMITH

By:_____
Anthony M. Smith
SBN# 18649425
4801 Broadway, No. 90391
San Antonio, TX 78209
Ofc: 210-281-9000
Fax: 210-247-6176
Attorney for Appellant

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d),(e), I certify that on August 17, 2015, I have served this document by first class mail on Appellant TDCJ # 01992891 Garza East Unit, 4304 Hwy. 202, Beeville, TX 78102 and electronically through E-FileTexas upon Appellee's counsel, Rico Valdez, Assistant Criminal District Attorney, 300 Dolorosa, Ste. 5030 San Antonio, TX 78205.

   /S/ Anthony Martin Smith
Anthony Martin Smith
